IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 14, 2023 Session

## MARYCLAIR MCDONALD V. KALEB COFFEL

**Appeal from the Circuit Court for Bradley County**
**No. V-13-280          Michael Jenne, Judge**

_____

### No. E2022-01569-COA-R3-CV

_____

In this action initiated by the mother to modify the parties' permanent parenting plan for their minor child, the trial court limited the father's co-parenting time to include no overnight visitation with the child after finding by a preponderance of the evidence that the father had committed domestic abuse against two women whom he had previously dated. The trial court relied on Tennessee Code Annotated § 36-6-406 to restrict the father's parenting time based on its determination that the father's acts of domestic violence and hostility toward women had a negative effect on his ability to effectively parent the minor child. The father appealed, but this Court dismissed that appeal because the trial court's order was not a final judgment. *See McDonald v. Coffel*, No. E2021-00460-COA-R3-CV, 2021 WL 4958475 (Tenn. Ct. App. Oct. 26, 2021). On remand, the trial court addressed all pending matters and entered a final judgment, keeping in place the residential co-parenting schedule limiting the father's parenting time to exclude overnight visitation. The father has again appealed, arguing that the trial court abused its discretion by denying him overnight co-parenting time and by relying on Tennessee Code Annotated § 36-6-406. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Kaleb Coffel.

Randy Sellers, Cleveland, Tennessee, for the appellee, Maryclair McDonald.

**OPINION**

## I. Factual and Procedural Background

The instant action began when petitioner, Maryclair McDonald ("Mother"), initiated litigation against the respondent, Kaleb Coffel ("Father"), on December 14, 2018, in the Bradley County Circuit Court ("trial court") when she filed an "Application for Emergency Relief, Attachment Pro Corpus, and Petition to Modify" ("Petition to Modify") the parties' residential co-parenting schedule for their then five-year old child ("the Child"). Prior to the filing of Mother's Petition to Modify, the parties had been operating under an order and permanent parenting plan ("PPP") entered on September 17, 2013, and a subsequent order entered on November 16, 2016, whereby the parties shared equal co-parenting time with the Child on alternating weeks.[1]

In her Petition to Modify, Mother averred that Father had been arrested and incarcerated for alleged domestic violence between himself and his then girlfriend, D.M. Mother further alleged that the purported domestic violence had occurred in the presence of the Child. Mother also claimed that the Child had been missing school while in Father's care. The trial court issued a temporary emergency order granting Mother immediate and full custody of the Child, with no co-parenting time for Father, pending a hearing that was to be conducted on December 18, 2018. After the December 18, 2018 hearing, the trial court ruled from the bench, instructing Father to attend anger management classes and determining that the parties' co-parenting time would continue to be equal but that Father's parenting time would take place at the home of Father's brother. The trial court's findings were later memorialized in a written order entered on February 25, 2019, *nunc pro tunc* to the date of the hearing.

On February 26, 2019, the trial court conducted a full hearing related to Mother's Petition to Modify and subsequently entered an "Interim Order" on May 23, 2019, determining, *inter alia*, that Father had "control problems, especially with women"; that since the December 18, 2018 hearing, D.M. had filed "another Order of Protection" against Father; that the Child's teacher and school principal did "not feel safe in Father's presence"; and that it was "probable that Father's attitude about the significant women in [the Child's] life is being picked up by [the Child]." The court further determined that the Child would be "educationally harmed" unless the Child lived "primarily with Mother[.]" Accordingly, the trial court limited Father's co-parenting time to "every other Wednesday from after school overnight to school on Thursday morning" and "every other weekend" from Friday afternoon to Sunday afternoon.

On March 12, 2020, Mother filed another "Motion for Emergency Relief," averring that Father had again been charged with and arrested for domestic assault. Mother sought

---

[1] The September 17, 2013 and November 16, 2016 orders are not in the record on appeal.

suspension of Father's co-parenting time and a cessation of any contact between Father and the Child. The Motion for Emergency Relief was accompanied by an affidavit and arrest warrant for Father's alleged burglary and domestic assault against a woman named N.R. at her home. The trial court issued an emergency order prohibiting Father from exercising his co-parenting time or contacting the Child.

On April 6, 2020, the trial court entered an agreed order wherein the parties agreed that Father would have co-parenting time every other weekend, from Friday afternoon to Sunday afternoon, to be exercised at the home of Father's brother. The parties further agreed that Father's previous Wednesday night co-parenting time would remain suspended and that Father would instead "FaceTime" with the Child every Wednesday evening at a certain time. The agreed order also provided that Father would seek an alcohol and drug assessment, would seek counseling for his "anger issues and issues involving women," and would follow the counselors' recommendations regarding same. The order held all other matters in abeyance.[2]

The trial court heard the remaining pending matters between Mother and Father on September 15 and 16, 2020, receiving testimony from several witnesses and the parties. At the close of proof, the trial court delivered its findings of fact and conclusions of law, which were memorialized in an order entered on April 29, 2021. The trial court suspended all of Father's overnight co-parenting time and directed that Father would continue to exercise daytime co-parenting time with the Child every other weekend and on holidays. The trial court further determined that during Father's co-parenting time, he was not to "be around his paramours or girlfriends or anything like that with the [Child]." The order set forth eight pages of findings of fact and conclusions of law regarding what the trial court categorized as Father's "history of domestic violence," Father's inability to "get along with women," and Father's refusal to seek court-ordered psychological evaluations and expert "help."

The trial court attached a new permanent parenting plan to the April 29, 2021 order. However, the court did not include a child support worksheet and did not address Mother's outstanding petitions for contempt against Father, which had been filed in February and June of 2019 but had never been set for hearing. Accordingly, when Father appealed the April 29, 2021 order, this Court dismissed the appeal for lack of subject matter jurisdiction because the order did not resolve all of the issues and was therefore not a final order. Following the dismissal, the appellate record was destroyed in accordance with this Court's standard procedure. *See* Tennessee Court of Appeals Rule 5(b)(1).

The matter returned to the trial court, and the trial court entered a final order on November 1, 2022, incorporating the April 29, 2021 order, resolving the pending contempt motions, and including a child support worksheet. Father timely appealed from the

---

[2] Subsequent to entry of the agreed order related to the parties, N.R. petitioned for an *ex parte* order of protection against Father, which resulted in an agreed restraining order issued on July 14, 2020, preventing Father from approaching or communicating with N.R. or her minor child.

November 1, 2022 order. The record of the first appeal having been destroyed, Father filed a motion on November 22, 2022, asking this Court to take judicial notice of the electronic version of the record in the previous appeal. This Court granted the motion, and the instant appeal proceeded.

## II. Issue Presented

Father has raised two issues on appeal, which we have consolidated into one and restated as follows:

> Whether the trial court abused its discretion by relying on Tennessee Code Annotated § 36-6-406 to limit Father's co-parenting time with the Child to exclude overnight visitation.[3]

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn.1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

Regarding an action to modify a permanent parenting plan, particularly as to the parents' residential parenting schedule, our Supreme Court has explained:

> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must

---

[3] In his appellate brief, Father has presented two separate issues for this Court's review, which we have consolidated herein. In the body of Father's argument section, the heading for the second issue states that the trial court's restriction of Father's overnight co-parenting time violated his "constitutional rights." Father does not expound on which constitutional rights he alleges were violated, nor does Father address any constitutional right or how the trial court purportedly violated such right. Tennessee Rule of Appellate Procedure 27(a) mandates that an appellant's brief must include "[a]n argument . . . setting forth . . . the contentions of the appellant with respect to the issues presented, and the reasons therefor . . . with citations to the authorities and appropriate references to the record . . . relied on[.]" Tenn. R. App. P. 27(a)(7)(A). Father has not complied with Rule 27 regarding his constitutional argument, and the argument is therefore waived. *See Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012) (explaining that an issue may be deemed waived when it has been expressly raised as an issue, but the brief fails to include an argument satisfying the requirements of Rule 27(a)(7)).

presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Kendrick* [*v. Shoemake*], 90 S.W.3d [566,] 570 [(Tenn. 2002)]; *Hass* [*v. Knighton,*] 676 S.W.2d [554,] 555 [(Tenn. 1984)].

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, *Holloway v. Bradley*, 230 S.W.2d 1003, 1006 (1950); *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court . . . appl[lies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013).

IV. Limitation of Father's Overnight Co-parenting Time.

Father contends on appeal that the trial court failed to "make the requisite findings" when it modified the parties' PPP to remove Father's overnight time with the Child. Tennessee courts generally apply a two-step analysis to a request for modification of a residential co-parenting schedule. *See Armbrister*, 414 S.W.3d at 697-98 (citing Tenn. Code Ann. § 36-6-101(a)(2)(C)); *see also Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *4 (Tenn. Ct. App. Dec. 9, 2015). The threshold inquiry in the analysis is whether a material change in circumstance has occurred. *See Armbrister*, 414 S.W.3d at 703. When the trial court finds that a material change in circumstance has occurred, the court must then determine whether a change in the parenting schedule is in

the child's best interest. *See id.* at 705; Tenn. Code Ann. §§ 36-6-404 (2021) and 36-6-405(a) (2017).

In *Armbrister*, our Supreme Court concluded that when the issue is modification of a residential parenting schedule, "[Tennessee Code Annotated] section 36-6-101(a)(2)(C) provides the governing standard for determining whether a material change in circumstances has occurred" to warrant modification of a residential co-parenting schedule. *See Armbrister,*
414 S.W.3d at 704. Tennessee Code Annotated § 36-6-101(a)(2)(C) (2021) provides:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

The *Armbrister* Court further explained that the statute

> sets "'a very low threshold for establishing a material change of circumstances'" when a party seeks to modify a residential parenting schedule. *Boyer* [*v. Heimermann,*] 238 S.W.3d [249,] 257 [(Tenn. Ct. App. 2007)] (quoting *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006)); *see also* Marlene Eskind Moses, *Modification of Permanent Parenting Plans in Tennessee*, 49 Tenn. B.J., May 2013, at 27, 28 ("The aforementioned standard [section 36-6-101(a)(2)(C)] sets what is widely known among domestic [law] practitioners as a very low threshold for establishing a material change of circumstances." (internal quotation marks omitted)).

*Armbrister*, 414 S.W.3d at 703. The *Armbrister* Court noted that the enactment of this statutory provision reflected "the General Assembly's 'policy decision to make it easier to establish that a material change in circumstances has occurred' when a party seeks to modify a residential parenting schedule." *Id.* (quoting *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007)).

- 6 -

Father contends that "a change in the circumstances of one or both parents that has not been shown to affect the child does not constitute a material change in circumstances[.]" In other words, Father argues that the Child could not be affected by something of which she was unaware. However, the statutory standard for determining a material change in circumstance requires the party seeking modification to show "a material change of circumstance affecting the child's best interest." (emphasis added). *See* Tenn. Code Ann § 36-6-101(a)(2)(C). Further, the statute "does not require a showing of a substantial risk of harm to the child." *Armbrister*, 414 S.W.3d at 702 (quoting Tenn. Code Ann. § 36-6-101(a)(2)(C)) (emphasis added). Instead, the statute provides a non-inclusive list of occurrences that "may include . . . significant changes in the needs of the child over time[.]" This non-inclusive list contemplates, *inter alia*, changes in either parent's "living or working condition that significantly affect parenting." Notably, the provision concludes with a catch-all phrase: " . . . or other circumstances making a change in the residential parenting time in the best interest of the child." *See id*. (emphasis added).

Here, the trial court listed several changes in circumstance that led it to conclude that a reduction in Father's co-parenting time would be in the Child's best interest. These included Father's three undisputed incidents of domestic violence between himself and two women, which the trial court determined were escalating in severity; Father's "controlling behavior"; Father's capability of "inflicting fear and emotional disturbance on someone with their child in the home"; Father's demonstrated "hostility toward the [Child's] mother and other women"; and Father's "lack of control, lack of management of his anger," and other "negative behavior traits" that the trial court deemed "abnormal." The trial court also noted that Father had failed to comply with the court's previous orders directing him to seek "help" in the form of a psychiatric evaluation.[4] These facts were sufficient for the trial court to determine that a material change in circumstance had occurred that affected the Child's best interest.

The trial court's findings above were also sufficient to conclude that a reduction in Father's parenting time was in the best interest of the Child. Tennessee Code Annotated § 36-6-405(a) provides that "[t]he process established by [Tennessee Code Annotated] § 36-6-404(b) shall be used to establish an amended permanent parenting plan or final decree or judgment." Tennessee Code Annotated § 36-6-404(b) provides in relevant part:

> The court shall make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child. The child's residential schedule shall

---

[4] Father argues that the trial court "failed to consider (a) Wayne Williams' 2019 letter regarding [Father's] counseling for control techniques and anger management skills" and a report from Dr. Tom Biller. However, although Father testified at trial about visits to each of these individuals, the record contains no report or letter from either of them.

be consistent with this part. If the limitations of § 36-6-406 are not dispositive of the child's residential schedule, the court shall consider the factors found in § 36-6-106(a)(1)-(15).

(Emphasis added.)

Here, the trial court found the limitations of § 36-6-406(a)(2) dispositive of the Child's residential schedule and accordingly limited Father's overnight parenting time. Tennessee Code Annotated § 36-6-406(a)(2) (2021) provides, in pertinent part:

(a) [A] parent's residential time as provided in the permanent parenting plan or temporary parenting plan shall be limited if it is determined by the court, based upon a prior order or other reliable evidence, that a parent has engaged in any of the following conduct:

* * *

(2) Physical or sexual abuse or a pattern of emotional abuse of the parent, child or of another person living with that child as defined in § 36-3-601.

Tennessee Code Annotated § 36-3-601 (2021) provides in pertinent part:

(4) "Domestic abuse" means committing abuse against a victim, as defined in subdivision (5);[5]

(5) "Domestic abuse victim" means any person who falls within the following categories:

(A) Adults or minors who are current or former spouses;

(B) Adults or minors who live together or who have lived together;

(C) Adults or minors who are dating or who have dated or who have or had a sexual relationship. As used herein, "dating" and "dated" do not include fraternization between two (2) individuals in a business or social context;

(D) Adults or minors related by blood or adoption;

---

[5] In his appellate brief, Father does not dispute that his actions toward D.M. and N.R. constituted "abuse" as defined by § 36-3-601. At the time of the instant petition's filing, the statute defined "abuse" in relevant part as "inflicting, or attempting to inflict, physical injury on an adult or minor by other than accidental means, placing an adult or minor in fear of physical harm, physical restraint, [or] malicious damage to the personal property of the abused party . . . ." Tenn. Code Ann. § 36-3-601(1) (2017).

(E)   Adults or minors who are related or were formerly related by marriage; or

(F)   Adult or minor children of a person in a relationship that is described in subdivisions (5)(A)-(E)[.]

In fashioning the parties' amended residential parenting schedule, the trial court suspended Father's overnight parenting time with the Child, pursuant to Tennessee Code Annotated § 36-6-406(a)(2), after determining that (1) Father had committed "domestic abuse" as defined by § 36-3-601 and (2) Father's episodes of domestic violence had "a bearing on his ability to parent the minor child" such that limiting Father's overnight parenting time was in the Child's best interest. Specifically, the trial court determined:

Domestic violence on behalf of [Father] is a big issue in this case and has been from 2016 through the date of this hearing.

[Tennessee Code Annotated] § 36-3-601 defines domestic abuse and that is controlling the Court's ruling in this case.

* * *

The Court finds by a preponderance of the evidence that [Father] has committed domestic violence against [D.M.] and [N.R.]. The Court relies on [Tennessee Code Annotated §] 36-6-406(a)(2) to limit [Father's] co-parenting time with the [Child].

The Court does not find [Father's] testimony credible as to the events that occurred in the domestic incident that occurred on 3 separate occasions between [Father] and [D.M.] and two acts of domestic violence against [N.R.], with the domestic violence against [N.R.] being the worst of the three.

[Father's] acts of domestic abuse have a bearing on his ability to parent the [Child] based on the public policy of the State of Tennessee. The [Child] does not need to be anywhere near someone that is capable of inflicting fear and emotional disturbance on someone with their child in the home as he did with [N.R.] with her child in her home.

(Paragraph numbering omitted.)

In his appellate brief, Father acknowledges that the trial court had the power to limit his parenting time pursuant to § 36-6-406(a), but asserts that the trial court erred by focusing on Father's interactions with D.M. and N.R. rather than focusing on Father's

positive relationship with the Child. Father posits that the events of domestic violence between Father and D.M. and Father and N.R. "occurred four (4) years apart" and that there was no evidence that these incidents affected the Child negatively.

However, the provisions of § 36-6-406(a) and § 36-3-601 focus on a parent's acts of abuse rather than on the effect those acts have had on the child. Moreover, these provisions do not limit the definition of "domestic abuse victim" to include only the children of the abuser. Section 36-6-406 authorizes the trial court to limit residential parenting time "if the court determines, based upon a prior order or other reliable evidence, that a parent has engaged in . . . physical or sexual abuse or a pattern of emotional abuse of the <u>parent, child or of another person living with that child as defined in § 36-3-601</u>." (Emphasis added). Section 36-3-601(5)(C) defines "domestic abuse" as committing abuse against "[a]dults or minors who are dating or who have dated or who have or had a sexual relationship [with the abuser]." Although the trial court did not find that Father had abused the Child, the trial court did find that Father had engaged in "domestic abuse" against D.M. and N.R., both of whom Father had dated, based upon arrest reports and witness testimony. The trial court then determined that the evidence was sufficient to limit Father's co-parenting time pursuant to § 36-6-406(a).[6] Accordingly, we find no error in the trial court's decision to limit Father's co-parenting time pursuant to § 36-6-406(a).

Father argues that the trial court erred in suspending his overnight co-parenting time because there was no proof that this particular arrangement would keep the Child "safe" and because the "only proven adverse effect" to the Child due to Father's behavior was "educational harm," a problem which, according to Father, the trial court had already solved by limiting his co-parenting time in a previous order. However, contrary to Father's assertion, the trial court did find that Father's acts of domestic violence had an adverse impact on the Child, stating that Father's "episodes of domestic violence with [N.R.] were adverse to [the Child]." The trial court further stated that the Child "does not need to be anywhere near someone that is capable of inflicting fear and emotional disturbance on someone with their child in the home as [Father] did with [N.R.] with her child in her home[,]" that Father was manipulative and may be "capable of manipulating [the Child] to her own harm[,]" that Father's "hostility toward the mother and other women . . . make it very difficult for him to assist the minor child in developing and maintaining appropriate interpersonal relationships[,]" and that Father exhibited "lack of control, lack of

---

[6] There was conflicting testimony at trial regarding Father's relationship with N.R. Father testified that N.R. was his girlfriend from November 2019 until March 2020, but N.R. testified that she had not dated Father. At the time of the incident between Father and N.R. that resulted in Father's arrest for domestic assault and burglary, N.R. described Father to the investigating officer as her "boyfriend." The trial court weighed this evidence and determined that both D.M. and N.R. fell within the definition of "domestic abuse victim" as defined by § 36-3-601(5). We find no reason to substitute our judgment for that of the trial court as to the relationship between Father and N.R., and we further decline to second-guess the trial court's determination that Father had committed domestic abuse against these two women. *See Eldridge v. Eldridge*, 42 S.W. 3d 82, 85 (Tenn. 2001).

- 10 -

management of his anger" and other "negative behavior traits" that the trial court found to be "abnormal."

Furthermore, although the trial court did not expressly state why it excluded overnights particularly from Father's co-parenting time, we note that the police reports in the record reflect that Father's violent incident with D.M. began at night and continued into the next morning and that Father's arrest for domestic assault and burglary at N.R.'s home occurred after 11:00 p.m. This evidence, in conjunction with the trial court's specific finding that Father had committed domestic abuse on more than one occasion, was sufficient for the trial court to reasonably determine that removal of Father's overnight parenting time was in the best interest of the Child. We are not at liberty to second-guess the trial court's reasoning or to "tweak" the trial court's residential parenting schedule in hopes of achieving a more reasonable result. *See Eldridge*, 42 S.W.3d at 88.

The trial court also relied on Tennessee Code Annotated § 36-6-406(d)(7) and (8) (2021) to limit Father's co-parenting time as follows:

> The Court has the inherent power to limit [Father's] co-parenting time pursuant to [Tennessee Code Annotated §] 36-6-406(d)(7) and (8). As to (7), the Court finds that [Father] committed domestic violence and under (8), the Court finds that the episodes of domestic violence with [N.R.] were adverse to the minor child herein.

Section 36-6-406(d) provides in pertinent part:

> (d)    A parent's involvement or conduct may have an adverse effect on the child's best interest, and the court may preclude or limit any provisions of a parenting plan, if any of the following limiting factors are found to exist after a hearing:
>
> * * *
>
> (7)    A parent's criminal convictions as they relate to such parent's ability to parent or to the welfare of the child; or
>
> (8)    Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

Regarding the trial court's application of § 36-6-406(d)(7), Father avers that "[n]o proof was offered establishing [Father] was convicted of domestic violence." We agree with Father that although the record reflects that Father had a "criminal charge pending" at the time of the final hearing, there is no evidence that Father was ever convicted of the crime of domestic abuse or domestic violence. However, even if the trial court erred in

- 11 -

applying § 36-6-406(d)(7), such error was harmless because the trial court properly limited Father's co-parenting time pursuant to § 36-6-406(a)(2).

Moreover, the trial court properly applied § 36-6-406(d)(8) to limit Father's co-parenting time. Subsection (8) is broad in reach in that it includes "such other factors or conduct as the court expressly finds adverse to the best interests of the child." The trial court's April 29, 2021 order is replete with "other factors" and "conduct" by Father that it expressly found adverse to the best interests of the Child. As stated above, these included Father's "history of domestic violence and other criminal involvements," Father's "controlling behavior," Father's capability of "inflicting fear and emotional disturbance on someone with their child in the home," his "control issues," his capability of "manipulating his child to her own harm," his "hostility toward [Mother] and other women who are significant in the minor Child's life," his lack of control [and] lack of management of his anger," and his failure to submit to a court-ordered psychological evaluation. Upon careful review, we find no abuse of discretion in the trial court's application of § 36-6-406(d)(8) to limit Father's co-parenting time. *See Eldridge*, 42 S.W. 3d at 85.

Finally, Father objects generally to the restriction of his co-parenting time "given the express legislative preference that parents receive the *maximum* time possible with their children." Father is correct that Tennessee Code Annotated § 36-6-106(a) (Supp. 2022) directs courts to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child . . . ." *See* Tenn. Code Ann. § 36-6-106(a); *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012) (explaining Tennessee public policy that "[m]ost children do best when they receive the emotional and financial supports of both parents" and determining that pursuant to Tennessee Code Annotated § 36-6-106(a), "Tennessee courts must now fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests.").

However, this Court has explained that consideration of a child's "best interest" outweighs consideration of the policy favoring a parent's "maximum participation" with a child:

> [A]s noted in *Rountree*, the court's ultimate determination must be guided by the best interest of the child. *Rountree*, 369 S.W.3d at 129, 133. Stated differently, "the best interest of the child, not the 'maximum participation possible' concept, remains the primary consideration under the governing statutory scheme." *Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019). "Section 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible participation in the child's life *only to the extent that doing so is consistent with the child's best interests*." *Id*. (emphasis

added) (quoting *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App. Oct. 5, 2016)).

*Powers v. Powers*, No. M2019-01512-COA-R3-CV, 2021 WL 1292425, at *7 (Tenn. Ct. App. Apr. 7, 2021). Here, the trial court expressly considered the importance of maximizing Father's time with the Child in light of Father's domestic violence and concluded:

> The Court finds that at one time it would have considered a 50/50 parenting schedule; however, given all that [Father] has done, he has "blown it, but he's more than blown it, he has blown it up." The Court cannot trust Father in his judgment, nor does he have a healthy attitude toward women to be modelled in front of the [Child].
>
> It is in the child's best interest for the child to have a relationship with [Father] but it is up to [Father] to prove to the Court and demonstrate to himself and the [C]hild that he is dealing with these issues that the Court has repeatedly asked him to deal with that he has not dealt with. [Father] is not emotionally healthy, and it is up to him to get healthy.
>
> As a result, the Court Orders that [Father] shall not have any overnight co-parenting time and shall exercise day visits only.

The trial court acknowledged that a continued relationship with Father was in the Child's best interest but properly balanced this interest against the evidence of Father's domestic violence to determine that excluding overnight visitation from Father's co-parenting time was in the Child's best interest. *See Powers*, 2021 WL 1292425, at *7. Because a residential parenting schedule determination lies "peculiarly within the broad discretion of the trial judge," *Suttles*, 748 S.W.2d at 429 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973), we decline to overturn the trial court's judgment in limiting Father's parenting time to exclude overnight visitation.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment limiting Father's co-parenting time with the Child as directed in the trial court's April 29, 2021 order and as incorporated into its November 1, 2022 final order. We remand the matter to the trial court for enforcement of the final judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Kaleb Coffel.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE